## THE BEATRICE BUSH.

### (Circuit Court of Appeals, Second Circuit. April 10, 1918.)

### No. 216.

COLLISION ⊚⇒96—VESSEL LYING OUTSIDE SLIP—MOVING TUG.

A collision between a tug, which had turned in to approach a pier, and the starboard bow of a carfloat lying outside a slip, where it had been dropped by another tug, which had just pulled it from a slip and was then making fast to its side, *held* due solely to the fault of the moving tug; the evidence showing that the float and its tug had not yet commenced any forward or turning movement, but were practically stationary.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty for collision by the Goodwin-Gallagher Sand & Gravel Corporation, owner of steam tug No. 14 against the steam tug Beatrice Bush; Bush Terminal Company, claimant. Decree dividing damages, and claimant appeals. Reversed.

The libel was brought by the steam tug No. 14 against the steam tug Beatrice Bush for a collision on February 14, 1916, at about 1 p. m., off the float bridge at Fifty-Second street, Brooklyn. The District Court held both boats at fault and divided the damages.

The Bush was backing out from the float bridge, pulling along the carfloat after her. When both float and tug were substantially perpendicular in the stream, she came forward to take the carfloat on her starboard hand and to make fast her lines. Her purpose was to round to under a port helm and go upstream toward New York.

The No. 14 was coming downstream to the starboard hand of the Bush and her float. There is a water hydrant on the pier at Fifty-Second street at which the No. 14 intended to take in water. To do so she had to cross the bows of the Bush and her float under a starboard wheel and reach the pier. In so doing the starboard corner of the carfloat struck a glancing blow on the port side of the No. 14; the overhang of the carfloat's bow laying in the rail of the tug. The No. 14 alleges as a fault on the part of the Bush that she had already begun to swing to starboard with her carfloat, and that in so doing she interfered with the maneuver of the No. 14.

The steam tug Carroll lay on the north side of the Fifty-Second Street Pier. The witnesses of both the Bush and the No. 14 insist that she crossed the bows of each before the collision took place or shortly after; but the master of the Carroll swears that at no time until after the collision was over did he leave the slip.

Samuel Park and Park & Mattison, all of New York City, for appellant.

George V. A. McCloskey, of New York City, William J. Martin, of Chicago, Ill., and Foley & Martin, of New York City, for appellee.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge. We cannot concur in the conclusion that the Bush was under way at the time of the collision, or at least that she had begun to turn to starboard, as Sullivan, the captain of the No. 14, says. It is true that his own deckhand in some measure supports him; but he is willing to go no further than to say: "She seemed to be starting out, coming ahead, swinging towards us."

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The testimony of both Sullivan and the deckhand is quite consistent with the tendency so common in these cases of attributing all of two relative movements to the observed vessel and none to the vessel upon which the witness himself is standing. It is true that Durkin, the captain of the Bush, seems to have had no very clear recollection of the situation, though it is possible that he was confused by the long examination. The best witness of all, and the most unbiased, is Dugan, the pilot of the Carroll, for, although he did not see the collision at the precise moment of its occurrence, it is perfectly clear from what he did see that the Bush was not under way. This he repeated several times and in various forms. He is borne out, moreover, by the testimony of the crew of the Bush, who say that the lines had only just been made fast, and some of whom say that the slack was still being taken up.

Concluding, as we do, therefore, that the Bush was substantially stationary in the water, there is no ground for holding her at fault. The fault of the No. 14 is amply proved, and we concur with the District Judge in his finding as to her.

Decree reversed, and libel dismissed, with costs of both courts.